IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROVI CORPORATION, ROVI TECHNOLOGIES CORPORATION, ROVI GUIDES, INC. (f/k/a GEMSTAR-TV GUIDE INTERNATIONAL INC.), GEMSTAR DEVELOPMENT CORPORATION, and UNITED VIDEO PROPERTIES, INC., | ) ) ) ) ) ) ) | |
| | ) | C.A. No. 11-665 (RGA) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| HULU, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT HULU LLC'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
mflynn@mnat.com

OF COUNSEL:

Morgan Chu
Ellisen Turner
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010

*Attorneys for Defendant Hulu, LLC*

April 23, 2012

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................... 1

I.  NATURE AND STAGE OF THE PROCEEDINGS ........................................... 2

II.  SUMMARY OF ARGUMENT ............................................................ 3

III.  STATEMENT OF FACTS ................................................................. 3

    A.  The Parties All Have Their Principal Operations In California, Where Relevant Evidence and Witnesses Reside. ................................... 3

    B.  The Allegations In Rovi's Complaint All Describe And Arise From Events In And Near The Central District Of California ................. 4

IV.  ARGUMENT ........................................................................ 8

    A.  The Relevant Legal Standards ...................................................... 8

    B.  The Private Interest Factors Strongly Favor Transfer To California Where the Parties, Evidence and Most Witnesses Are Located, and Where the Claims Arose. ................................... 10

        1.  Under the circumstances, Rovi's venue choice merits little weight. ................................................................ 11

        2.  Hulu's preferred forum is also the most convenient as the parties have previously recognized. ................................ 13

        3.  Rovi's claims arose in California. ............................................. 13

        4.  California is overwhelmingly more convenient for both the parties and for non-party witnesses. ............................. 14

        5.  The relevant evidence is located in California. ......................... 16

    C.  The Public Interest Factors Also Strongly Favor Transfer To the Central District of California. ................................................. 16

        1.  A judgment against either party would be more easily enforced in California. ................................................ 16

        2.  Practical considerations and court congestion favor transfer to the Central District of California. ............................. 17

**Page**

3.      Delaware has no local interest in requiring
        Delaware corporations to litigate patent disputes in
        an inconvenient venue...................................................................18

4.      The Central District of California has a strong
        interest in this matter.................................................................18

V.      CONCLUSION..................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acuity Brands, Inc. v. Cooper Indus., Inc.*,
    C.A. No. 07-444, 2008 WL 2977464 (D. Del. July 31, 2008) ................................ 9

*Alloc, Inc. v. Unilin Décor N.V.*,
    C.A. No. 05-587-GMS, 2006 WL 3050815 (D. Del. Oct. 26, 2006) ................... 15

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
    295 F.Supp.2d 393 (D. Del. 2002) ........................................................................ 10

*Burstein v. Applied Extrusion Techs., Inc.*,
    829 F.Supp. 106 (D. Del. 1992) ............................................................................ 12

*Cashedge, Inc. v. Yodlec, Inc.*,
    C.A. No. 06-170, 2006 WL 2038504 (D. Del. July 19, 2006) .............................. 17

*Clopay Corp. v. Newell Cos., Inc.*,
    527 F.Supp. 733 (D. Del. 1981) ............................................................................ 11

*Continental Cas. Co. v. Am. Home Assurance Co.*,
    61 F.Supp.2d 128 (D. Del. 1999) .......................................................................... 12

*Digeo, Inc. v. Gemstar-TV Guide Int'l, Inc., et al.*,
    No 2:06-CV-01417, 2007 U.S. Dist. LEXIS 6255
    (W.D. Wa. Jan. 29, 2007) ................................................................................ 6, 7

*Gemstar-TV Guide Int'l, Inc. et al. v. Digeo Inc. et al.*,
    No. 2:06-cv-06519 (C.D. Cal. Oct. 13, 2006) ....................................................... 5

*Illumina v. Complete Genomics, Inc.*,
    C.A. No. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010) ............ 11, 14, 16, 17

*In re Acer America Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010),
    *cert. denied*, 131 S. Ct. 2447 (2011) ................................................................... 15

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009) ...................................................................... 16, 19

*In re Hoffman-La Roche*,
    587 F.3d 1333 (Fed. Cir. 2009) ............................................................................ 19

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221 (Fed. Cir. 2011) ........................................................................ 3, 10

**Page(s)**

*In re TS Tech US Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)...................................................................... 16, 19

*Intellectual Ventures I LLC v. Altera Corp.*,
    C.A. No. 10-1065-LPS, 2012 WL 297720 (D. Del. Jan. 23, 2012)..................... 12

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)......................................................................... 8, 11

*Mekiki Co. Ltd. v. Facebook Inc.*,
    C.A. No. 09-745, 2010 WL 2348740 (D. Del. June 7, 2010)................................ 9

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
    77 F.Supp.2d 505 (D. Del. 1999)...................................................................... 11

*Microsoft v. Geotag*,
    C.A. No. 11-175-RGA, 2012 U.S. Dist. LEXIS 4284
    (D. Del. Jan. 13, 2012)................................................................................ 13, 16

*Moore v. Telfon Commc'ns Corp.*,
    589 F.2d 959 (9th Cir. 1978) .......................................................................... 15

*Netflix v. Rovi Corp.*,
    No. 5:11-cv-06591-PSG (N.D. Cal. Dec. 21, 2011) ............................................ 5

*Pennwalt Corp. v. Purex Industries, Inc.*,
    659 F.Supp. 287 (D. Del. 1986)........................................................................ 12

*Qinetiq Ltd. v. Oclaro, Inc.*,
    C.A. No. 09-372, 2009 WL 5173705 (D. Del. Dec. 18, 2009)........................ 9, 10

*Robocast v. Apple*,
    C.A. No. 11-235-RGA, 2012 U.S. Dist. LEXIS 24879
    (D. Del. Feb. 24, 2012) ............................................................................... 10, 17

*Rovi Solutions Corp. v. Lenovo, et al.*,
    No. 3:12-CV-01398 (N.D. Cal.) .......................................................................... 6

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)............................................................................ 8, 13

*Signal Tech LLC v. Analog LLC*,
    C.A. No. 11-1073-RGA, 2012 WL 1134723 (D. Del. Apr. 3, 2012) ......... 3, 12, 15

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)............................................................................................ 8

**Page(s)**

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
　　C.A. No. 08-838, 2009 WL 463977 (D. Del. Feb. 24, 2009) ................................. 9

*Teleconference Sys. v. Proctor & Gamble Pharmas, Inc.*,
　　676 F. Supp. 2d 321, 329 (D. Del. 2009)............................................. 9, 10, 14, 15

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*,
　　C.A. No. 04-360-JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005)......................... 11

*Wacoh Co. v. Kionix Inc.*,
　　C.A. No. 10-617-RGA, 2012 U.S. Dist. LEXIS 2166
　　(D. Del. Jan. 9, 2012) ................................................................................. 9, 17, 18

**Statutes**

28 U.S.C. § 1400.............................................................................................................. 8

28 U.S.C. § 1404............................................................................................................ passim

## INTRODUCTION

This dispute involves six parties that all have their principal business operations in California.  According to Rovi's pleadings,[1] the dispute arose when the parties' patent licensing negotiations, all of which occurred in California, broke down.  The great majority of the witnesses as well as the parties' documents, facilities, personnel, and potentially discoverable information are all located in California.  One of the plaintiffs is a California corporation.  Further, the parties have entered into agreements that require venue in the state and federal courts in California for certain disputes between them.  Indeed, Rovi has itself filed multiple claims concerning its Electronic Programming Guide (EPG) patent portfolio in California and has sought to transfer related claims to California on the very same grounds set forth in this motion.

In contrast to the overwhelming weight of the factors that favor resolving this dispute in California where it belongs, the only connection between this action and Delaware is that it was the state of incorporation for a subset of the parties.  No party has any other presence in Delaware.  Under these circumstances, the plaintiffs' choice to litigate here is an insufficient basis to tether this dispute to a venue over 2,700 miles from the location most convenient for all parties involved.  Defendant Hulu LLC ("Hulu") therefore respectfully moves this Court under 28 U.S.C. § 1404(a) for transfer to the United States District Court for the Central District of California.

---

[1] Plaintiffs Rovi Corporation, Rovi Technologies Corporation, Rovi Guides, Inc. (f/k/a Gemstar-TV Guide International Inc.), Gemstar Development Corporation, and United Video Properties, Inc. are referred to collectively herein as "Rovi."

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On July 28, 2011, Rovi filed a complaint in the District of Delaware claiming direct infringement of three patents from Rovi's EPG portfolio.  (D.I. 1).  Rovi's initial complaint also asserted indirect infringement claims, both contributory infringement and inducement, for two of the patents.

Due to Rovi's failure to explain the basis for its infringement claims or provide Hulu with any information necessary to determine what activities were allegedly at issue, Hulu twice filed motions to dismiss.  (D.I. 8 and 22).  Rather than respond to Hulu's first motion, Rovi filed a First Amended and Supplemental Complaint in which it voluntarily abandoned all of its contributory infringement claims and provided minimal supplementation to its induced infringement claims.  (D.I. 20).  Glaring deficiencies in Rovi's claims remained and Hulu was again forced to move to dismiss.  (D.I. 22).  The Court granted Hulu's second motion, finding that "[t]here are simply no facts plead to advise Hulu how or why Hulu's conduct infringes on Rovi's patents, what actions Hulu took that would warrant a conclusion that infringement was done willfully or intentionally, and no facts to support the claims that Hulu induced others to infringe." (D.I. 26 at 2-3).

With all of its prior claims rejected by Court Order, on February 27, 2012, Rovi filed a Second Amended and Supplemental Complaint and Hulu filed its Answer on March 12, 2012.  (D.I. 29 ("Compl.") and 31 ("Answer")).  Now that Rovi has finally at least begun to reveal the basis for its claims against Hulu, it has become apparent that the parties' disputes all have their genesis and center in California where this lawsuit belongs.

## II.     SUMMARY OF ARGUMENT

This matter indisputably has its greatest connection to California where every party runs its business operations, where one of the Plaintiffs is incorporated, and where non-party witnesses continue to reside.  The vast majority of the potentially relevant employees, records and other evidence are in California.  Further, Rovi itself apparently believed that California was the most convenient venue when it agreed that certain types of disputes between it and Hulu *must* be resolved in California.  In addition, Rovi has successfully moved to transfer a prior matter involving its EPG patent portfolio to the Central District of California on the grounds that it is a far more convenient venue.

As this Court very recently observed in *Signal Tech LLC v. Analog LLC*, "when a plaintiff sues a defendant in District A and the plaintiff, the defendant, and all the potential witnesses and evidence are located in District B, and there is no other valid reason for denying a request for transfer to District B, it is an abuse of discretion not to grant the transfer."  C.A. No. 11-1073-RGA, 2012 WL 1134723 at *4 (D. Del. Apr. 3, 2012) (interpreting *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011)). The only distinction here — that a subset of the parties were incorporated in Delaware — should yield no different outcome than that in *Link_A_Media*.  The relevant private and public interest factors plainly demonstrate that this matter should be transferred to California.

## III.    STATEMENT OF FACTS

### A.     The Parties All Have Their Principal Operations In California, Where Relevant Evidence and Witnesses Reside.

All of the parties, including those incorporated in Delaware, have their principal business operations in California.  The Rovi entities all share the same address in Santa

Clara, California, while Hulu's headquarters are in Los Angeles, which is in the Central District of California.  Compl. ¶¶ 2-7; Ex. A ¶ 3 (Decl. of John R. Foster).  Further, one party, Gemstar Development Corporation, is incorporated in California.  Compl. ¶ 5.

Hulu has no business operations or employees in Delaware.  Ex. A ¶ 8.[2]  It does not maintain any offices, bank accounts, property, or phone numbers in Delaware; nor does it employ any Delaware residents.  *Id.* at ¶ 8.  Hulu also does not design or make any of its products or services in Delaware.  *Id.*  So far as Hulu can determine from Rovi's allegations in the Complaint regarding the accused instrumentalities, all of Hulu's hardcopy and electronic documents that concern those instrumentalities, or that could possibly be construed as relevant to this action, reside in Hulu's office in Los Angeles.  *Id.* at ¶ 5.  Further, substantially all of Hulu's potentially relevant business activities take place in the Central District of California.  *Id.* at ¶¶ 5-6.

Neither Rovi nor Hulu alleges that it, or anyone else relevant to the suit, has any substantial business operations, employees or offices in Delaware.  There are no documents or witnesses relevant to this suit located in Delaware.

> **B.    The Allegations In Rovi's Complaint All Describe And Arise From Events In And Near The Central District Of California.**

Rovi alleges that "[i]n August 2008, Rovi (then known as Macrovision) initiated discussions with Hulu regarding licensing of its EPG patent portfolio" and that Rovi "has attempted to continue discussions with Hulu after the August 2008 presentation."  Compl. ¶¶ 24-25.  All of these discussions between the parties occurred in California and involved California residents.  Ex. A ¶ 5.  At least two of the persons involved are no longer employed by any party, but they continue to reside in California.  *Id.*

---

[2] "Ex." refers to Exhibits to the Declaration of Ellisen Turner filed herewith.

In connection with their discussions in 2008, Hulu and Rovi, which was then going by the name Macrovision, entered into Rovi's form Non-Disclosure Agreement. Ex. B. The first paragraph of that NDA states that Rovi's "principal place of business" is at "2830 De La Cruz Boulevard, Santa Clara, California" and that Hulu's "principal place of business" is in "Los Angeles, California." Ex. B, p. 1. Importantly, the agreement contains no mention whatsoever of Delaware; instead, it states that "[t]his agreement shall be governed by California law as applied to contracts made between two California residents." Ex. B p. 2 ¶ 7. Further, far from selecting Delaware as a venue for their disputes, the parties agreed that "the state and federal courts located in Santa Clara, California shall have jurisdiction for any dispute arising under this Agreement." *Id.*

Rovi and its related entities have also repeatedly demonstrated by their conduct that the federal courts in California, and the Central District of California in particular, are more convenient for them to litigate patent infringement claims. For example, in 2006, Gemstar-TV Guide International Inc. and United Video Properties, Inc. filed a patent infringement complaint regarding patents from their EPG portfolio against Digeo Inc. in the Central District of California. *Gemstar-TV Guide Int'l, Inc. et al. v. Digeo Inc. et al.*, No. 2:06-cv-06519 (C.D. Cal. Oct. 13, 2006). Further, in a declaratory judgment action pending against it in the Northern District of California, Rovi opted to newly assert additional patents in a counterclaim there rather than file them in a new action in Delaware. *Netflix v. Rovi Corp.,* No. 5:11-cv-06591-PSG (N.D. Cal. Dec. 21, 2011); Ex. C (Rovi's answer in Netflix adding three new patents beyond those in Netflix's complaint). Further, just days ago, Rovi Solutions Corporation, which has the same Santa Clara address as the plaintiff entities in this matter, filed a patent infringement suit

against Lenovo in the Northern District of California. *Rovi Solutions Corp. v. Lenovo, et al.*, No. 3:12-CV-01398 (N.D. Cal.).

Rovi's Complaint devotes multiple paragraphs to describing its EPG products and EPG patent licensing program. *See, e.g.,* Compl. ¶¶ 11-18. But Rovi's business related to its EPGs and EPG patents is centered in the Central District of California. Rovi itself demonstrated as much when it moved to transfer another action concerning its EPG patent licensing activity to that district. In 2006, Digeo filed a complaint in the Western District of Washington against Rovi due to Rovi's antitrust violations regarding its EPG licensing program. *Digeo, Inc. v. Gemstar-TV Guide Int'l, Inc., et al.*, No 2:06-CV-01417, 2007 U.S. Dist. LEXIS 6255 (W.D. Wa. Jan. 29, 2007). Rovi successfully transferred that matter to the Central District of California based in part on convenience considerations under Section 1404(a). *Id.* In support of its motion, Rovi submitted briefs and declarations that included the following salient facts and positions:

- "This case is particularly appropriate for transfer to the Central District of California because [the various Rovi entities] are all headquartered in Los Angeles, California." Ex. D p. 18, ll. 14-16.

- Gemstar-TV Guide International, Inc., which is now plaintiff Rovi Guides, Inc., and its subsidiaries are "based in Los Angeles." Ex. D p. 5, l. 14.

- "Gemstar [Rovi] generally conducts its licensing program out of its Los Angeles headquarters." Ex. E ¶ 6 (Armaly Decl.). "Gemstar acts as the primary licensing agent for its subsidiaries." Ex. E ¶ 32 (Armaly Decl.). "Indeed, almost all of Gemstar's patent licensing negotiators are in Los Angeles." Ex. D p. 8, l. 9.

- With respect to Rovi's EPG patent licensing program, "Gemstar's headquarters [in Los Angeles, California] will be the site of the vast majority of potentially relevant evidence, namely, documents and correspondence relating to licensing negotiations . . . ." Ex. D p. 8, ll. 14-17, p. 20, ll. 7-14, p. 21, ll. 6-23, pp. 22-23.

- Samir Armaly, Rovi's Senior Vice President of Intellectual Property and Licensing, who was intimately involved in Rovi's discussions with Hulu,

has been a point person in Rovi's patent licensing discussions for years. Ex. E ¶ 3 (Armaly Decl.).  He is located in the Central District of California and he signed his declaration in support of Rovi's motion to transfer in Los Angeles, California.  Ex. E p. 6 (Armaly Decl.); Ex. F ¶ 3 (Goldberg Decl.); Ex. D p. 5, ll. 18-19.

- At least ten current or former Rovi employees central to its EPG products and EPG patent licensing program are located in the Central District of California.  Ex. F ¶ 3 (Goldberg Decl.).

- With regard to Rovi's EPG licensing scheme, "most of the parties, witnesses, and evidence are located [in the Central District of California]." Ex. D p. 4, ll. 15-17 & p. 5, ll. 11-12.

- "[T]he fact that most of the witnesses and parties (including the [] defendants), as well as the vast majority of the evidence … are located in California weighs heavily in favor of proceeding with the litigation in California."  Ex. D p. 12, ll. 19-23.

- The action should be transferred to the Central District of California because the attorneys for both parties were based in that district.  Ex. D p. 18, ll. 20-22 & p. 22, ll. 9-16.

- The action should proceed in the California because that was where the allegedly infringing software was deployed and developed.  Ex. D p. 19, ll. 6-7 & p. 22, ll. 1-3.

- "[I]n patent infringement actions, the preferred forum is that which is the nucleus of the accused activity."  Ex. D p. 24, ll. 9-10.

California state bar records confirm that Rovi's principal negotiators for its EPG patent portfolio, Samir Armaly and Clay Gaetje, continue to work in Burbank, California.[3] Exs. I, J.  Although Rovi subsequently acquired the Gemstar entities involved in the *Digeo* matter for $2.8B, Ex. H, these same relevant employees, documents, and arguments again compel transfer to the Central District of California.

---

[3] Burbank is within Los Angeles County, California and also within the Central District of California.

## IV.    ARGUMENT

### A.    The Relevant Legal Standards

In accordance with Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This "vest[s] district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

To determine whether to transfer an action pursuant to § 1404(a), courts must first decide whether the plaintiff could have brought the suit in the transferee forum. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). A district is one in which the suit "might have been brought" if it has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue. *Id.* In patent infringement cases, venue is proper in the judicial district where the defendant has allegedly "committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Because Hulu's executive management and principal business operations are in California, where Hulu develops, maintains, and deploys its software, the three-part threshold requirement is met. Ex. A ¶ 5.

Next, courts in the Third Circuit consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara,* 55 F.3d at 879-880 (internal quotations and citation omitted). In ruling on Section 1404(a) motions,

courts have considered many variants of the private and public interests protected by the language of *§ 1404(a)*.  The private interests have included:  (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  The public interests have included:  (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.[4]

*Wacoh Co. v. Kionix Inc.*, C.A. No. 10-617-RGA, 2012 U.S. Dist. LEXIS 2166 at *7-8 (D. Del. Jan. 9, 2012) (citations omitted).  This Court has transferred numerous cases to the federal courts in California on an appropriate showing under these factors.  *See Mekiki Co. Ltd. v. Facebook Inc.*, C.A. No. 09-745, 2010 WL 2348740 (D. Del. June 7, 2010) (transferring case to N.D. Cal. where defendant was incorporated in Delaware but had its principal place of business in California); *Qinetiq Ltd. v. Oclaro, Inc.*, C.A. No. 09-372, 2009 WL 5173705 (D. Del. Dec. 18, 2009) (same); *see also Teleconference Sys.*, 676 F.Supp.2d at 331; *Synthes USA, LLC v. Spinal Kinetics, Inc.*, C.A. No. 08-838, 2009 WL 463977 (D. Del. Feb. 24, 2009).

The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the § 1404(a) analysis.  *Teleconference Sys.*,

---

[4] This is not a diversity case and the "familiarity of the trial judge with the applicable state law" factor is not relevant.  *Teleconference Sys. v. Proctor & Gamble Pharmas, Inc.*, 676 F. Supp. 2d 321, 329 (D. Del. 2009); *Acuity Brands, Inc. v. Cooper Indus., Inc.*, C.A. No. 07-444, 2008 WL 2977464, at *3 (D. Del. July 31, 2008) ("[I]t is well settled that patent rights are not considered state or local matters and do not implicate local interests.").

676 F.Supp.2d at 331 (D. Del. 2009).  Transfer is strongly favored where key witnesses and documents are located in the transferee district and are easier to access than in Delaware.  *Id.*  As shown below, in this action, the relevant private and public factors all strongly favor transfer to the Central District of California.

**B.    The Private Interest Factors Strongly Favor Transfer To California Where the Parties, Evidence and Most Witnesses Are Located, and Where the Claims Arose.**

This matter indisputably has a greater connection to California, where each and every party runs its business operations and where non-party witnesses continue to reside. Compl. ¶¶ 2-7; Ex. A ¶ 3.  The vast majority of employees, records, and other evidence are all in California and the parties have previously agreed that certain types of disputes between them *must* be resolved in California.  Ex. A¶¶ 4-6; Ex. B.  As this Court has observed, "when the parties, all the witnesses, and all the evidence are in one distant jurisdiction, and the only connection to Delaware is that it is the state of incorporation of the defendant, and there is no other reason for the suit to be in Delaware, the suit must be transferred, upon timely request, to the distant jurisdiction." *Robocast v. Apple*, C.A. No. 11-235-RGA, 2012 U.S. Dist. LEXIS 24879 at *15 (D. Del. Feb. 24, 2012) (interpreting *Link_A_Media*, 662 F.3d 1221).

Here, although the Defendant and four of the five Plaintiff entities were incorporated in Delaware (the fifth is incorporated in California), that fact alone is not dispositive, especially because all other considerations overwhelmingly favor transfer. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F.Supp.2d 393, 398-99 (D. Del. 2002) ("Where an alternative forum is more convenient and has more substantial connections with the litigation, incorporation in Delaware will not prevent transfer.") (quotations omitted); *Qinetiq*, 2009 WL 5173705, at *4 ("[I]t is clear that a party's

- 10 -

incorporation in Delaware is not dispositive of a motion to transfer."); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F.Supp.2d 505, 509 n.6 (D. Del. 1999) (noting that a defendant's state of incorporation "is certainly not dispositive" and is neither "mentioned in § 1404" nor identified as a factor in *Jumara*).  Indeed, this Court has transferred a case to a federal court in California even where all the parties were incorporated in Delaware.  *See Illumina v. Complete Genomics, Inc.*, C.A. No. 10-649, 2010 WL 4818083, at *3 (D. Del. Nov. 9, 2010).

If a plaintiff's choice of venue were to trump all other considerations in such circumstances, Section 1404(a) would be rendered a nullity for all Delaware corporations.  As this Court's decisions discussed *supra* reflect, that cannot be the right result.  This matter should be transferred to the far more, and indeed only, convenient venue for everyone involved—California.

### 1. Under the circumstances, Rovi's venue choice merits little weight.

Although a plaintiff's choice of forum may be accorded substantial weight, "[t]he preference in favor of plaintiffs' choice of forum is not adopted blindly or without reason."  *Clopay Corp. v. Newell Cos., Inc.*, 527 F.Supp. 733, 736 (D. Del. 1981).  As Rovi has itself argued in the past, "[w]here an action has little connection to the chosen forum, less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum."  Ex. D p. 20, ll. 18-19.

The weight that might normally be accorded to Plaintiffs' choice of Delaware as the forum is significantly reduced here.  First, Delaware is not the "home turf" for either Rovi or Hulu, which have their principal places of business in Santa Clara, California and Los Angeles, California respectively.  Compl. ¶¶ 2-6; *see Trilegiant Loyalty Solutions,*

*Inc. v. Maritz, Inc.*, C.A., No. 04-360-JJF, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (if the plaintiff has chosen to litigate away from its "home turf"—which refers to its principal place of business—the defendant's burden is lessened); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D. Del. 1986) (plaintiff's choice of forum not as compelling if forum is not its "home turf").[5]  Further, even if Rovi's state of incorporation might have made Delaware part of Rovi's putative "home turf," *see, e.g.*, *Intellectual Ventures I LLC v. Altera Corp.*, C.A. No. 10-1065-LPS, 2012 WL 297720, at *7 (D. Del. Jan. 23, 2012), the fact that its principal places of business are in California, and that Rovi has previously submitted sworn declarations that establish the Central District of California is more convenient because all of Rovi's relevant operations are in Los Angeles, weigh strongly in favor of transfer to the Central District of California.  *See Signal Tech*, 2012 WL 1134723, at *2, *5 (plaintiff's choice of Delaware forum "not entitled to 'paramount' consideration" because "plaintiff is (the equivalent of) a non-Delaware corporation," with no "principal place of business (or indeed, any place of business) in Delaware").

In addition, the operative facts occurred outside of Delaware—Hulu's software development and deployment and Rovi's licensing activities, including its negotiations with Hulu, all occurred in California.  Ex. A ¶¶ 4-6; Ex. E ¶ 6, Ex. D p. 8, ll. 14-17, p. 20,

---

[5] *See also Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D. Del. 1999) ("[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred."); *Burstein v. Applied Extrusion Techs., Inc.*, 829 F.Supp. 106, 110 (D. Del. 1992) ("When the plaintiff has chosen to bring suit in a district that is not his home turf and which has no connection to any of the acts giving rise to the lawsuit, the convenience to the plaintiff is not as great as it would be were he litigating at or near his principal place of business or at the site of the activities at issue in the lawsuit.") (internal quotations omitted).

ll. 7-14, p. 21, ll. 6-23, pp. 22-23.  Under these circumstances, Rovi's choice of Delaware

as a forum is not entitled to great weight, and transfer to the Central District of California,

which has a much greater connection to the operative facts, the parties, the witnesses and

the relevant documents, is appropriate.  *Microsoft v. Geotag*, C.A. No. 11-175-RGA,

2012 U.S. Dist. LEXIS 4284, at *5 (D. Del. Jan. 13, 2012) (citing *Shutte*, 431 F.2d at 25).

> ### 2.    Hulu's preferred forum is also the most convenient as the parties have previously recognized.

Hulu's chosen forum is the Central District of California.  This has also long been

Rovi's chosen forum.  As the parties recognized in their NDA, and as Rovi has averred in

a prior motion to transfer, the federal courts in California are the most convenient

location to adjudicate Rovi's claims.  Ex. B; Ex. D p. 8, ll. 14-17, p. 12, ll. 19-23, p. 20,

ll. 7-14, p. 21, ll. 6-23, pp. 22-23.  Rovi has thus openly asserted in the past that

California is the most convenient location and the Court should not abide any new

arguments to the contrary.

> ### 3.    Rovi's claims arose in California.

The remainder of the private interest factors also favor transfer.  Rovi's claims are

based on allegations that Hulu learned of, and then directly infringed, Rovi's patents, all

of which could only have occurred where Hulu, "create[s] and sell[s] their … [online

television programming] services," originates its source code, and develops its

technology, which is in Los Angeles, California.  *Microsoft v. Geotag*, 2012 U.S. Dist.

LEXIS 4284, at *6.  Further, Rovi's discussions with Hulu in August 2008, which formed

the alleged basis for Hulu's knowledge of Rovi's patents, also occurred entirely in Los

Angeles.  Ex. A ¶ 5; Compl. ¶¶ 24-25.  Thus, Rovi's claims arose in the Central District

of California — not Delaware.

### 4. California is overwhelmingly more convenient for both the parties and for non-party witnesses.

The convenience of the parties and witnesses, and the location of relevant evidence—"the most important factors in the § 1404(a) analysis"—all strongly favor transfer. *See, e.g., Illumina*, 2010 WL 4818083, at *3 (quoting *Teleconference Sys.*, 676 F.Supp.2d at 331). The Central District of California is a much more convenient venue than Delaware for all parties. Hulu has its headquarters and main office there. Ex. A ¶ 3. Its executives and the vast majority of its relevant employees, including database developers, data analytics engineers, interactive designers, product and program managers, software developers, and user experience visual designers—reside in Los Angeles. Ex. A ¶ 6. Hulu has no operations or employees in Delaware. Ex. A ¶ 8. *See Illumina, Inc.*, 2010 WL 4818083, at *3 (finding litigation in Delaware highly disruptive to business operations of California-based defendant). Compelling Hulu to continue litigating this matter in Delaware, especially during trial, would create serious hardship for Hulu due to the expense and difficulty of transporting counsel, employees, and records and other evidence from California to Delaware. Ex. A ¶ 7. Further, at least some non-party fact witnesses may not be available for trial in Delaware. Ex. A ¶ 5.

The Central District of California is also plainly not inconvenient for Rovi, which is based in Santa Clara, California and conducts its EPG patent licensing operations in Los Angeles, California. In addition, Rovi's choice to assert patent infringement claims in the Northern and Central Districts of California, and Rovi's prior motion to transfer a dispute to California on convenience grounds, demonstrates that Rovi does not find it inconvenient to litigate claims in California courts.

- 14 -

Moreover, transfer is favored here because none of the parties have facilities in Delaware nor maintain their principal place of business there. *Alloc, Inc. v. Unilin Décor N.V.*, C.A. No. 05-587-GMS, 2006 WL 3050815, at *2 (D. Del. Oct. 26, 2006). Trial counsel for all parties are also located in California. *See Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 968 (9th Cir. 1978) (transfer appropriate where numerous factors, including location of counsel, demonstrated that transferee district would be more convenient). A trial in Delaware will thus be far more expensive and difficult for both Rovi and Hulu than a trial in the Central District of California.

The Central District of California is also a much more convenient venue for the witnesses who will incur substantial travel costs if required to appear in Delaware. *See In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), *cert. denied*, 131 S. Ct. 2447 (2011) (finding travel costs to weigh in favor of transfer). The vast majority of Hulu's and Rovi's employees, who will probably form the bulk of the non-expert witnesses, are located in California. Moreover, Hulu is not aware of, nor has Rovi identified, any witnesses with relevant evidence residing in Delaware. "The fact that plaintiff has not identified a single material witness who resides in Delaware rather than California is telling and weighs in favor of transfer." *Teleconference Sys.*, 676 F.Supp. at 332.

Furthermore, this Court would not have subpoena power over any non-party witnesses in California. By contrast, the Central District of California would have subpoena power over Hulu's ex-employees that still reside in California. *See Signal Tech*, 2012 WL 1134723, at *3. Similarly, Rovi's other witnesses with relevant

knowledge are also likely located in Santa Clara and Los Angeles where Rovi admittedly operates its EPG licensing business.

### 5.     The relevant evidence is located in California.

The "location of books and records" also favors transfer.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."  *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Hulu has no documents in Delaware that concern the asserted patents or that could possibly be construed as relevant to this action, and it is highly unlikely that any other party's documents would be found here.  Ex. A ¶¶ 5-8.  Hulu's documents, "which are most likely the most important records for this litigation" are maintained in the Central District of California, far distant from Delaware.  *Microsoft v. Geotag*, 2012 U.S. Dist. LEXIS 4284, at *8; *Illumina*, 2010 WL 4818083, at *3 (highlighting the convenience of the Northern District of California as a forum for parties with their documents in that district).  This is true notwithstanding the advent of electronic discovery.  *See In re TS Tech US Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (concluding that the district court erred in failing to weigh the ease of access to information as part of its transfer analysis on the grounds that certain materials were available electronically).

### C.     The Public Interest Factors Also Strongly Favor Transfer To the Central District of California.

The *Jumara* public interest factors also weigh heavily in favor of transfer.

### 1.     A judgment against either party would be more easily enforced in California.

The majority of Rovi's and Hulu's physical assets are located in California, and Hulu has no physical assets in Delaware.  The parties would therefore have an easier time enforcing any judgment in the Central District of California than in Delaware.  Thus, to

the extent it is considered a meaningful issue, the "enforceability of the judgment" factor

favors transfer.

>    2.    **Practical considerations and court congestion favor transfer to the Central District of California.**

The "practical considerations" factor includes judicial efficiency regarding the

ease, speed, or expense of trial.  *See Cashedge, Inc. v. Yodlec, Inc.,* C.A. No. 06-170,

2006 WL 2038504, at *1 (D. Del. July 19, 2006).  With all the parties and the relevant

evidence residing in California, and primarily in Los Angeles, a court in the Central

District of California would have much easier and more efficient access to the

individuals, records and materials related to the case.  *See Illumina*, 2010 WL 4818083, at

*6 (analyzing the "practical considerations" factor and explaining that the Northern

District of California is the appropriate forum because many of the witnesses and much

of the relevant evidence is located in California).  Although the relative "court

congestion" factor may also favor transfer in appropriate circumstances,[6] this Court has

previously found that  "the relative administrative difficulty due to court congestion is

difficult to assess" and declined to give it meaningful weight in the analysis.  *Robocast*,

2012 U.S. Dist. LEXIS 24879 at *12; *see also Wacoh*, 2012 U.S. Dist. Lexis 2166 at *15-

16.

---

[6] Table C-5 of the federal court systems' Report of Judicial Caseload Statistics shows that as of March 31, 2011, the median time to trial for a civil case in the District of Delaware was 31.0 months, while it was only 19.9 months in the Central District of California. Ex. G.  In addition, on average, Central District of California cases resolved on the merits are terminated in 14.9 months, compared to 27.9 months in the District of Delaware.  *Id.*

3.   **Delaware has no local interest in requiring Delaware corporations to litigate patent disputes in an inconvenient venue.**

If a plaintiff's venue choice were to transcend the clearly countervailing transfer considerations in circumstances such as these, Section 1404(a) would be rendered a nullity for all companies incorporated in Delaware.  Further, although "[t]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes," the parties here have previously agreed to resolve business disputes between them in California.  Accordingly, as Rovi itself has elected to not claim the benefits of being a Delaware corporation, any weight that might have been accorded to Delaware's interest in providing a forum for business disputes is greatly diminished.  *Cf. Wacoh*, 2012 U.S. Dist. LEXIS 2166 at *16 (finding that "the corporations that might want to claim the benefits of being a Delaware corporation do not want to do so in this case.  Thus, I do not see this factor as having any weight in this case.").[7]

4.   **The Central District of California has a strong interest in this matter.**

The "local interest" factor also weighs in favor of transfer.  Delaware has no connection to the controversy between Rovi and Hulu over Rovi's EPG patent licensing

---

[7] In assessing the public interest factors, this Court has previously noted that Delaware corporations may find the Delaware state court system desirable.  *See, e.g., Wacoh*, 2012 U.S. Dist. LEXIS 2166 at *16-17 n.9 (noting that the State of Delaware Division of Corporations, on its website, states that "Businesses choose Delaware because we provide a complete package of incorporation services including modem and flexible corporate laws, our *highly-respected Court of Chancery*, a business-friendly State Government, and the customer service-oriented Staff of the Delaware Division of Corporations.") (emphasis added).  Nevertheless, Delaware corporations should not be required to litigate all *federal* claims against them in the District of Delaware despite the overwhelming convenience of another venue, and companies do not abandon their rights under Section 1404(a) simply by incorporating in Delaware.

business, which is based in California, or Hulu's online video entertainment software, which is developed, maintained, and deployed in California.  The Central District of California, on the other hand, has a significant interest in hearing a dispute involving Hulu and the patents at issue.  Hulu has its headquarters and biggest office in the Central District of California.  Rovi's communications with Hulu in August 2008, which allegedly led to all operative facts in this case, occurred in Los Angeles.  Further, many of the Rovi licenses and Hulu content providers mentioned in Rovi's complaint have either headquarters or substantial operations in California, but not in Delaware.  California's strong interest in resolving disputes between and involving parties and individuals with nearly all of their business operation in California significantly favors transfer.  *See, e.g., In re TS Tech*, 551 F.3d at 1321; *In re Genentech*, 566 F.3d at 1347-48; *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (noting that the local interest may also be "strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.").

## V.   CONCLUSION

All parties have chosen to base their business operations in California, have selected California counsel to represent them in this matter, and have previously demonstrated their preference for California by jointly selecting it as the required venue for certain disputes between them.  Everything about this matter is centered in California.  As Rovi itself has admitted in prior litigation, California is the most convenient location for all parties and numerous potentially relevant non-party witnesses.  For these and the reasons set forth above, Hulu respectfully moves this court to transfer this suit to the United States District Court for the Central District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Hulu, LLC*

OF COUNSEL:

Morgan Chu
Ellisen Turner
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
(310) 277-1010

April 23, 2012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 23, 2012 upon the following in the manner indicated:

Frederick L. Cottrell, III, Esquire                    *VIA ELECTRONIC MAIL*
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, DE  19801

Daralyn J. Durie, Esquire                              *VIA ELECTRONIC MAIL*
Ragesh K. Tangri, Esquire
Clements S. Roberts, Esquire
Jesse Geraci, Esquire
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111-3007

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)